**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **OMAR JAMON HILL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-257-M** |
| | ) | |
| **JOE M. ALLBAUGH, Director,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Omar Jamon Hill, appearing pro se, has petitioned this Court for a writ of habeas corpus, challenging through 28 U.S.C. § 2254 the constitutionality of his criminal conviction by the State of Oklahoma. United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. Respondent filed an Answer (Doc. No. 7) to the Petition (Doc. No. 1), to which Petitioner replied (Doc. No. 10). For the reasons outlined below, it is recommended that Petitioner's request for habeas relief be denied.

### I.      Relevant Case History

On the morning of November 21, 2010, Petitioner sought medical assistance for his girlfriend's 20-month-old daughter, M.R., whom he claimed to have found nonresponsive and moaning on the downstairs level of his girlfriend's home. M.R. died that day as the

---

[1] Because Petitioner is incarcerated at a privately operated correctional facility, the current Director of the Oklahoma Department of Corrections is hereby substituted as Respondent in this proceeding. *See* R. 2(a), 12, R. Governing § 2254 Cases in U.S. Dist. Cts. ("Section 2254 Rules"); Fed. R. Civ. P. 25(d), 81(a)(4).

result of blunt force trauma to her chest, abdomen, and back, and her death was later ruled a homicide by the state medical examiner. *See* Pet. Ex. 2 (Doc. No. 1-2) at 2; Vol. IV Trial Tr. 117-18; Vol. VI Trial Tr. 321 (*State v. Hill*, No. CF-2010-7765 (Okla. Cnty. Dist. Ct. Dec. 5-9, 2011)) (Doc. No. 9 (conventionally filed)). Following a jury trial in the District Court of Oklahoma County, Oklahoma, Petitioner was convicted of one count of first-degree murder. Pet. at 1-2.[2] On February 23, 2012, Petitioner was sentenced to life imprisonment. *Id.* at 1; Original Record ("OR") (Doc. No. 9) at 156-58.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). Pet. at 2; *see Hill v. State*, No. F-2012-204 (Okla. Crim. App.). The OCCA affirmed Petitioner's conviction and sentence on March 14, 2014. Pet. at 2; *see* OCCA Summ. Op. (Doc. No. 7-3). Petitioner did not seek any further relief prior to initiating the instant proceeding. Pet. at 2-3, 12.

On March 12, 2015, Petitioner filed this federal habeas action. *See* Pet. at 1. Respondent concedes, and the record likewise reflects, that the Petition was timely filed and that Petitioner has exhausted his state-court remedies as to his habeas claims. *See* 28 U.S.C. §§ 2244(d)(1), 2254(b); Answer at 2; Pet. at 2, 5-11, 13; Pet'r's Appellate Br. (Doc. No. 7-1) at 14-36; Pet'r's Appl. Evidentiary Hr'g (Doc. No. 7-4) at 2-6; OCCA Summ. Op. at 1-12.

---

[2] Citations to documents filed electronically in this Court use the CM/ECF pagination.

## II.    Standard of Review

The Tenth Circuit has summarized the standard of review for evaluating claims that have been adjudicated on the merits by the state courts and raised in federal court through a 28 U.S.C. § 2254 habeas proceeding:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.

> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted). Pursuant to AEDPA, factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Discussion

#### A. Ground One: Ineffective Assistance of Trial Counsel

In Ground One, Petitioner cites six bases for his argument that he was denied effective assistance of trial counsel. *See* Pet. at 5-7; Pet. Ex. 2, at 2; Pet'r's Appellate Br. at 14-28.

Claims of ineffective assistance of counsel in violation of the Sixth Amendment are analyzed under the familiar two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, [Petitioner] must show that counsel's performance was deficient." *See id.* at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was "not within the range of competence demanded of attorneys in criminal cases." *See id.* at 687-88 (internal quotation marks omitted). There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

With respect to the second prong of the analysis, Petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (citations and internal quotation marks omitted).

Because the OCCA applied *Strickland* to deny Petitioner's ineffective-assistance claims on the merits, this Court reviews the OCCA's decision under § 2254(d)(1) "to determine whether or not it applied *Strickland* in an objectively reasonable manner." *Spears v. Mullin*, 343 F.3d 1215, 1248 (10th Cir. 2003); *see* OCCA Summ. Op. at 2-3. When the "highly deferential" standard of *Strickland* is applied in tandem with the "highly deferential" standard of § 2254(d), the resulting review is "doubly" deferential. *Richter*, 562 U.S. at 105 (internal quotation marks omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Failure to Call M.R.'s Brothers to Testify

First, Petitioner argues that his trial counsel erred by not calling M.R.'s older brothers to testify regarding the circumstances of M.R.'s death. *See* Pet. at 5-7; Pet'r's Appellate Br. at 14-18, 27-28; Pet'r's Reply at 4-5. The two boys, R.B. and I.B., were five and four years old at the time, respectively, and were downstairs with Petitioner and M.R.

on the morning that Petitioner claimed he had found M.R. already injured and then carried her upstairs to seek emergency medical care. Vol. III Trial Tr. 68; Vol. IV Trial Tr. 52, 54; Vol. VI Trial Tr. 315-16, 318.

On the day of M.R.'s death, each boy was questioned in a forensic interview. *See* Ct.'s Exs. 3 (R.B.'s interview), 4 (I.B.'s interview) (Doc. No. 9).[3] Prior to the commencement of trial, the trial court ruled that defense counsel could not reference the videotapes of those interviews in opening argument but instructed both parties that if they called the brothers to the stand or sought to introduce the videotapes during trial, the court would make its rulings as to competency and admissibility at that time. *See* Vol. I Trial Tr. 35, 37; Vol. II Trial Tr. 345-52; *see also* Vol. I Trial Tr. 8-38. On the fifth day of trial, the trial court granted the State's related motion in limine, ruling that the defense could not question witnesses regarding the contents of the interviews. *See* Vol. V Trial Tr. 14-15, 16-28. The trial judge noted at that time that he did not know how the videotapes could be admissible but instructed Petitioner's counsel to approach and present argument if he wished "to get [the] contents of those tapes before this jury." *Id.* at 18-19. Petitioner's counsel did not seek to introduce the recorded interviews at trial or call the two brothers (by that point aged six and five) to testify during trial. *Cf. id.* at 237 (Trial Court: "[Y]ou haven't offered the videotape." Defense Counsel: "True.").

---

[3] The videotaped interviews were presented at the sentencing of Petitioner and designated as Court's Exhibits 3 and 4. *See* Sent'g Tr. 4-6 (*State v. Hill*, No. CF-2010-7765 (Okla. Cnty. Dist. Ct., Feb. 23, 2012)) (Doc. No. 9); Ct.'s Exs. 3, 4

According to Petitioner, the boys "were important witnesses" and his counsel's failure to call the boys to testify was inexplicable. Pet'r's Appellate Br. at 14, 18. The OCCA rejected this argument on direct appeal, stating:

> Hill claims first that trial counsel was ineffective for failing to call [M.R.]'s older brothers as witnesses at trial. He contends that the boys' testimony was necessary for his defense because they were the only witnesses to the circumstances surrounding her death and their testimony would have provided exculpatory evidence. The forensic interviews of the boys were videotaped. Their accounts of the circumstances surrounding [M.R.]'s death were confused, internally inconsistent, and contradictory to each other in many details. And, while some of their statements could be viewed as exculpatory, others were inculpatory. In sum, the interview tapes suggest that the boys' testimony would be less than credible, and possibly damaging to the defense, depending on which version the jury believed. For that reason Hill cannot overcome the presumption that trial counsel's decision against calling the boys as witnesses was sound trial strategy.

OCCA Summ. Op. at 3.

Having reviewed the forensic interviews, the undersigned concludes that it was not unreasonable for the OCCA to find that both boys' statements were confusing and arguably unfavorable to the defense, and the interviews contradicted each other's, and Petitioner's own, accounts of the events from that morning in multiple ways. *See, e.g.*, Ct.'s Ex. 3 (R.B. providing multiple versions of the events of November 21, 2010; R.B. stating that Petitioner had told the boys not to wake up M.R.; R.B. answering "No" when questioned about whether it was okay to talk about whether something had happened to M.R.; R.B. saying that he held M.R. and then saying that M.R. was on the table); Ct.'s Ex. 4 (I.B. relaying multiple versions of the events of November 21, 2010, all of which identified his father, rather than Petitioner, as the male adult who was present at the house on that morning; I.B. providing inconsistent accounts about the children being on the bunk beds;

I.B. stating that his brother gave "basketball medicine" to M.R. and made her die). Petitioner thus has not shown that the OCCA's decision "was based on an unreasonable determination of the facts" and has not rebutted the presumption that the appellate court's factual determinations are correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015) ("The presumption of correctness also applies to factual findings made by a state court of review based on the trial record." (internal quotation marks omitted)).[4]

Further, Petitioner's counsel "could have reasonably determined" that the risks of making such young children testify "far outweigh[ed] the benefit" of their potential testimony. *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998). "[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008); *cf. Richter*, 562 U.S. at 110 (noting that *Strickland* requires "an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind"). Given the boys' young ages and uncertain interview statements, Petitioner cannot show that his trial counsel's decision to forgo such

---

[4] The interplay between § 2254(d)(2) and (e)(1) "is an open question," and "it is unclear which standard imposes a greater burden on the petitioner." *Sharp v. Rohling*, 793 F.3d 1216, 1228 n.10 (10th Cir. 2015) (citing *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 (2015)); *see also Wood v. Allen*, 558 U.S. 290, 293, 299 & n.1 (2010). The Supreme Court has suggested that the standard of § 2254(d)(2) is "more exacting" than that of § 2254(e)(1). *Sharp*, 793 F.3d at 1228 n.10 (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Following the approach of the Tenth Circuit in its precedential *Sharp* decision, the undersigned has assumed § 2254(e)(1)'s applicability and has concurrently assessed the claims herein for purposes of § 2254(e)(1). *See id. But see Wood*, 558 U.S. at 301 (declining to decide whether a state court's factual determination, if found to not be an unreasonable determination of the facts under § 2254(d)(2), also "should be reviewed under the arguably more deferential standard set out in § 2254(e)(1)").

testimony was objectively unreasonable. *See Strickland*, 466 U.S. 687-88; *Parker v. Scott*, 394 F.3d 1302, 1322 (10th Cir. 2005) (finding defense counsel's decision not to call the six-year-old sister of a child victim to testify was reasonable when counsel "was unsure what the child would say on the stand as a witness"); *see also* Vol. I Trial Tr. 19, 24, 28, 31-32 (defense counsel stating that he had not been permitted to communicate with the children prior to trial).

Because Petitioner's attorney did not perform deficiently in declining to call R.B and I.B. to the stand, the undersigned need not address whether Petitioner was prejudiced by his trial counsel's performance. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Petitioner has not shown that there is no "reasonable argument" that his counsel performed effectively, *Richter*, 562 U.S. at 105, and the OCCA's denial of this claim was not an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d)(1).

### 2. Failure to Seek Admission of Forensic Interviews

Next, Petitioner objects that his attorney's failure to offer the videotapes of the forensic interviews into evidence at trial was unreasonable, given that the boys were with M.R. the morning of her death and the interviews "provide[d] valuable information about what occurred the morning of [M.R.'s] death." Pet'r's Appellate Br. at 14; *see id.* at 15, 19-21, 27-28; Pet. at 5-7; Pet'r's Reply at 2-4. The OCCA rejected this claim on the merits:

> Hill claims trial counsel was ineffective for failing to offer the recorded forensic interviews into evidence on the theory that the tapes were admissible under the residual exception to the hearsay rule at 12 O.S.2011, § 2804.1(A).

For hearsay to be admissible under Section 2804.1(A), it must possess "equivalent, though not identical, circumstantial guarantees of trustworthiness" as provided by the other statutory exceptions to the hearsay rule. Given the confused, contradictory, and inconsistent statements of these very young boys, it is clear the interview tapes are not inherently trustworthy, and had trial counsel raised this argument, it would have been properly overruled. Trial counsel was not ineffective. *See Frederick v. State*, 2001 OK CR 34, ¶ 189, 37 P.3d 908, 955 ("[i]t is well established that where there is no error, one cannot predicate a claim of ineffective assistance of counsel upon counsel's failure to object").

OCCA Summ. Op. at 3-4.

As explained above, Petitioner cannot show, given the variable and unclear interview responses of R.B. and I.B., that the OCCA's conclusions regarding the contents of the videotapes are based upon unreasonable determinations of fact and cannot rebut the presumption of correctness allowed to the appellate court's factual findings. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Al-Yousif*, 779 F.3d at 1181; Ct.'s Exs. 3, 4.

Nor can Petitioner show that his trial counsel's actions "were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, such that the OCCA's application of *Strickland* could be considered unreasonable under § 2254(d)(1). *See Richter*, 562 U.S. at 105. Petitioner argues that the videotapes would have been admissible under Oklahoma's residual exception to the hearsay rule, but the OCCA found, as a matter of state law, that any such effort to admit them as evidence on this basis would have been properly rejected by the trial court. *See* Okla. Stat. tit. 12, § 2804.1; *cf. Mitchell v. State*, 120 P.3d 1196, 1203-04, 1206-07 (Okla. Crim. App. 2005) (holding that trial court abused its discretion in admitting evidence of a four-year-old's response to a detective's questions under section 2804.1(A)); Vol. V Trial Tr. 18-19 (trial court noting that defense counsel

may seek to introduce the videotapes but that the court did not "see any way" that any part of their contents was admissible). It follows that Petitioner's counsel "could have reasonably determined" that it was better not to move to admit the videotapes, *Jackson*, 143 F.3d at 1320, especially in light of the possibility that some of the statements therein were arguably prejudicial to Petitioner as explained above. Again, Petitioner cannot "overcome the presumption that, under the circumstances," this decision "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). Petitioner therefore has not shown deficient performance by his trial counsel such as would overcome *Strickland*'s presumption of reasonableness or require this Court to reject the OCCA's application of that clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Tafoya v. Tansy*, 9 F. App'x 862, 869 (10th Cir. 2001) (rejecting habeas petitioner's argument that counsel was ineffective for failing to present certain character evidence where that evidence "would not have been admissible" under state law). Relief on this claim should be denied.

### 3. Choice of Theory of Defense

At trial, the defense attempted to shift the manner of M.R.'s death away from Petitioner and toward an accidental fall from a bunk bed and the cardiopulmonary resuscitation (or "CPR") that M.R. received from her aunt while awaiting professional medical assistance. *See, e.g.*, Vol. III Trial Tr. 38-39, 41-42, 151-59, 169, 192-94, 239-41, 271-72, 275-76, 278-79; Vol. IV Trial Tr. 139-40, 142-47; Vol. V Trial Tr. 144-48, 166-69. Citing the State's evidence and testimony rejecting this possibility, Petitioner argues that his counsel erred by pursuing this theory rather than investigating and presenting the

defense that M.R. died from one or both of her brothers inflicting trauma upon her. *See* Pet. at 5-7; Pet. Ex. 2, at 2; Pet'r's Reply at 5-7; Pet'r's Appellate Br. at 21-25; Pet'r's Appl. Evidentiary Hr'g at 1-32. The OCCA disagreed, stating:

> Hill also claims that counsel was ineffective in choosing as a theory of defense the argument that [M.R.] died from improperly administered cardiopulmonary resuscitation. He argues counsel should have thoroughly investigated and presented a more viable defense—that [M.R.'s] four[-] and five[-]year[] old brothers inflicted her massive internal injuries.

> Trial counsel's determination to defend on a theory that [M.R.] died from CPR gone wrong was a strategic decision, as was the decision against defending on the ground that her brothers caused her injuries, a theory lacking in evidentiary support and contradicted to some extent by the available evidence. And "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. The record shows defense counsel's strategic choice to present the CPR defense was made after a reasonably complete investigation and that counsel's decision against a siblings-did-it defense was reasonable because it lacked evidentiary support and was contradicted to some extent by the available evidence. Trial counsel was not ineffective.

OCCA Summ. Op. at 4-5 (citation omitted). The OCCA additionally denied Petitioner an evidentiary hearing on this ineffective-assistance claim:

> Hill requests the Court remand the case to the district court for an evidentiary hearing to supplement the record with certain evidence. In support, Hill provides affidavits from Edward Friedlander, M.D., Victoria Ransom, and Kim Marks. Dr. Friedlander's affidavit states that the nature of [M.R.'s] injuries strongly suggests she was kicked and stomped by her siblings. Victoria Ransom, an aunt of the little boys, states that she told defense counsel she believed one of the boys jumped or fell off the bunk bed and landed on [M.R.]. The affidavit of Kim Marks includes an attachment indicating that one of the boys had discipline problems at school.

> None of these affidavits provides any direct evidence that her brothers injured [M.R.][;] nor do they support a reasonable inference that one or the other boy injured [M.R.], or that either boy had the physical strength to inflict the massive internal injuries that caused her death, either by striking her intentionally or accidentally falling on her.

. . . The affidavits fail to provide sufficient support for the alternative defense theory Hill argues should have been pursued. Hill's application for evidentiary hearing is denied.

OCCA Summ. Op. at 5 (citing OCCA R. 3.11(B)(3)(b)(i)); *see also Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013) ("[A]ny denial of a request for an evidentiary hearing on the issue of ineffective assistance of counsel filed pursuant to OCCA Rule 3.11 . . . operates as an adjudication on the merits of the *Strickland* claim and is therefore entitled to deference under § 2254(d)(1).").

The record supports the OCCA's characterization of the record regarding defense counsel's choice and regarding the evidence relevant to the likely success of a siblings-did-it defense. *See, e.g.*, Vol. III Trial Tr. 38-39, 41-42, 151-59, 169, 192-94, 239-41, 271-72, 275-76, 278-79 (defense counsel's argument and cross-examination regarding CPR-caused injuries); Vol. IV Trial Tr. 202-04, 209-10 (State's witness noting that CPR can cause injuries but rejecting the proposition that a four- or five-year-old child could have caused [M.R.'s] injuries); Vol. V Trial Tr. 130-68, 289 (Petitioner's own medical expert offering testimony to support CPR as the cause of death); Pet'r's Appl. Evidentiary Hr'g at 28-29 (affidavit from M.R.'s aunt stating that prior to trial Petitioner's defense counsel had discussed with her the theory that one of the brothers had caused the injuries). Petitioner thus has not shown that the OCCA's decision was based upon an unreasonable factual determination or rebutted the presumption of correctness afforded to its factual findings.

Further, the existence of testimony that was presented at trial to challenge the plausibility of defense counsel's chosen theory does not establish that counsel's decision to pursue that theory was objectively unreasonable. This Court, like the OCCA, is

prohibited from viewing the attorney's actions through a retrospective—i.e., "distort[ed]"—lens. *See Strickland*, 466 U.S. at 690; *accord Duran v. Att'y Gen. of N.M.*, 565 F. App'x 719, 722 (10th Cir. 2014) (noting that the fact that a "tactical judgment . . . might be questioned in hindsight" "does not mean it is necessarily unreasoned or unreasonable"). Nor does the availability of other possible defense theories establish that there is no "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. The Tenth Circuit has explained:

> The Sixth Amendment does not require an attorney to investigate every possible avenue of research to the ends of the Earth. Instead, it requires an attorney "to make a reasonable investigation in preparing his defense," and that "includ[es] reasonably deciding when to cut off further investigation." *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006); *see Strickland*, [466 U.S. at 690-91].

*Duran*, 565 F. App'x at 722 (first alteration in original); *see also id.* at 722-23 (affirming denial of habeas relief on ineffective-assistance claim where defense counsel "didn't abandon what he thought was his client's only viable defense" but instead "believed he had another, better argument"). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Richter*, 562 U.S. at 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)).

For all of these reasons, Petitioner has not shown that he is entitled to relief on this claim under 28 U.S.C. § 2254(d)(1) or (d)(2).

### 4. Failure to Object to Prosecutor's Remarks

During final closing argument, one of the State's attorneys referred to Cierra Ransom and Victoria Ransom, M.R.'s mother and M.R.'s aunt, respectively, who had both

testified earlier in the trial and were in the courtroom observing the arguments. The attorney then asked rhetorically:

> Who do you think they're here for? Well, maybe you can't see. Who do you think they're here for? Do you think they're here for [M.R.]?
>
> . . . .
>
> Do you think that anybody is here for [M.R.]? No. Look where they're sitting. Look what side it is. They are here for him. And that's sad. Because even now, nobody cares about [M.R.].

Vol. VI Trial Tr. 405-06.

Petitioner argues that his trial counsel was ineffective in not objecting to these comments, because the comments improperly evoked sympathy for the victim and asked the jury to form credibility assessments based upon facts not in evidence. *See* Pet. at 5-7; Pet's Appellate Br. at 25-26, 27-28.[5] The OCCA addressed this claim in detail:

> Hill claims trial counsel should have objected to comments made by the prosecutor during closing argument appealing to sympathy for [M.R.] and relying on facts not in evidence. . . . .
>
> This comment is an obvious appeal for sympathy, and clearly asks jurors to draw an inference as to Cierra's and Victoria's credibility as witnesses, not based on any evidence, but on the happenstance of their seats in the courtroom. An objection likely would have been sustained by the trial judge. *Cf. Malicoat v. State*, 2000 OK CR 1, ¶ 34, 992 P.2d 383, 402 (finding improper appeal for sympathy where prosecutor argues that family was

---

[5] A habeas petitioner generally cannot succeed on a claim that his attorney was constitutionally ineffective for not objecting to a prosecutor's allegedly improper conduct without first showing "that the underlying prosecutorial-misconduct claim[] [itself] has merit." *Hanson v. Sherrod*, 797 F.3d 810, 837 (10th Cir. 2015). Petitioner did not raise a prosecutorial-misconduct claim—i.e., a claim premised upon the conduct of the State rather than that of his counsel—before the OCCA and has not raised any such habeas claim in this Court. *See* Pet'r's Appellate Br. at 2-3, 14-35; Pet. at 5-11. Moreover, Petitioner fails to show that the unobjected-to conduct of the State discussed herein violated a specific constitutional right or rendered his trial fundamentally unfair. *See Dodd*, 753 F.3d at 990; *Hanson*, 797 F.3d at 836-41.

present in courtroom for defendant, but jury was there for murdered infant). Hill must show that he was prejudiced by the omission. That is, he must show to a reasonable probability that the outcome of the trial would have been different had the objection been raised. *Strickland*, [466 U.S. at 694]. Given the fact[] that 20-month[]-old [M.R.] was already a sympathetic victim, and given further that Cierra's and Victoria's biases in favor of Hill had been brought to the jury's attention during the prosecutor's examination, it is unlikely that jurors were influenced by this argument, and Hill points to no evidence suggesting that they were. He has not demonstrated sufficient prejudice to warrant a finding that trial counsel was ineffective here.

OCCA Summ. Op. at 6-7.

Petitioner fails to show "a reasonable probability" that, without his counsel's alleged error, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The OCCA reasonably found that a 20-month-old baby who was killed by blunt force trauma was a sympathetic victim. *Cf. Hooper v. Mullin*, 314 F.3d 1162, 1173 (10th Cir. 2002) (rejecting a claim of prosecutorial misconduct where "[t]he facts of the crime itself invoke[d] sympathy" even without the improper remarks). The jury already had been presented with a great deal of evidence regarding the circumstances of M.R.'s death and the severe internal injuries and bleeding she had suffered, including multiple graphic autopsy photos. *See, e.g.*, Vol. IV Trial Tr. 75-123, 125-41, 150-51, 155; State's Exs. 1-6, 26, 28-32, 34-43, 45-47 (Doc. No. 9); Def.'s Exs. 2-4 (Doc. No. 9); *cf. Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998) ("The State's strong evidence of the aggravating circumstances of [the victim's] murder . . . makes it probable that the nature of the crime produced sympathy for the victim long before the prosecutor gave his closing remarks."). The jury also had been made aware that both Cierra Ransom and Victoria Ransom had refused to comply with the State's requests for interviews but had met with Petitioner's

defense counsel several times.  *See* Vol. III Trial Tr. 177, 179, 184.  Further, the jury was specifically instructed "to base its decision only on the evidence received, and not to allow sympathy to affect its deliberations." *Hooper*, 314 F.3d at 1173; *see* OR 96, 105, 115.  The Court may presume that "the jury followed these instructions." *Hooper*, 314 F.3d at 1173; *accord Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987).

In view of these facts, Petitioner fails to show a "substantial" likelihood of a different result had his trial counsel objected to the prosecutor's remarks during closing argument. *Richter*, 562 U.S. at 112; *cf. Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999) (noting that defense counsel's failure to object is relevant to a fundamental-fairness inquiry).  Petitioner therefore cannot meet the prejudice prong of *Strickland* and cannot obtain relief under this Court's doubly deferential review of the OCCA's adjudication of this claim. *See Richter*, 562 U.S. at 105; *Hooper*, 314 F.3d at 1173; 28 U.S.C. § 2254(d)(1), (2).

### 5.  Failure to Request Jury Instruction on Attorney Interviews

During its redirect examination of Victoria Ransom, the State highlighted both Victoria Ransom's and Cierra Ransom's unwillingness to assist with the prosecution of the criminal case against Petitioner and willingness to talk to Petitioner's defense team and prior defense attorney. *See* Vol. III Trial Tr. 177 (Q: "Last week when Ms. Carlson and I tried to interview you and your sister, you both refused to come in and talk to us, is that right?" A: "Not refused."  Q: "But you didn't do it when we asked, right?"  A: "That's right."); *id.* at 179 (Victoria Ransom agreeing that she would not meet with the prosecution prior to trial, although she met with Petitioner's defense counsel twice (along with Cierra

Ransom)); *id.* at 184 (discussing a meeting between Victoria Ransom and Petitioner's prior attorney). At closing, the State again commented upon these witnesses' having met with Petitioner's attorneys multiple times while refusing to meet with the State. *See* Vol. VI Trial Tr. 406-07 ("[I]t's obvious where their loyalties lie, ladies and gentlemen.").

In light of the State's emphasis on the women's interviews with defense attorneys, Petitioner claims that his trial counsel was ineffective for failing to request Oklahoma's uniform criminal jury instruction regarding the right of attorneys to interview witnesses. *See* Pet. at 5-7; Pet'r's Appellate Br. at 26, 27-28.[6] The OCCA disagreed:

> According to Hill, trial counsel should have requested Instruction No. 9-24, OUJI-CR(2d), which states:
>
>> An attorney has the right to interview his/her witnesses for the purpose of learning the testimony the witness will give. The fact that the witness has talked to an attorney and told the attorney what he/she would testify to does not, by itself, reflect adversely on the truth of the testimony of the witness.
>
> . . . .
>
> The obvious intent of this instruction is to mitigate the effect of a party attempting to unfairly impeach the credibility of an opposing party's witness by suggesting through questions on cross-examination that the witness's testimony was unfairly shaped by pretrial preparation by counsel. Indeed, the OUJI *Committee Comments* for this instruction make clear this purpose by stating that the instruction should be given only where "cross-examination" elicits the fact of pretrial interviews. *See Committee Comments* to Instruction No. 9-24, OUJI-CR(2d)(Supp.2000).
>
> Hill mistakenly asserts that Victoria's disclosure of her participation in pretrial interviews came under cross-examination by the prosecutor. The record shows that Victoria was presented as a prosecution witness and it was

---

[6] Petitioner does not seek habeas relief, and did not seek appellate relief, based upon the trial court's failure to issue a jury instruction regarding pretrial interviews. *See* Pet. at 5-11; Pet'r's Appellate Br. at 2-3, 14-35. Nor does Petitioner show that the omission of such an instruction "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995).

the prosecutor who questioned her about her pretrial interviews with defense counsel during redirect examination, in an attempt to impeach his own witness. Based on the intent of the instruction to mitigate impeachment by an opposing party, and on plain language of the OUJI commentary, we conclude that had trial counsel requested the instruction, the request would have been denied. Hill was not entitled to the instruction and trial counsel was not ineffective for failing to request it.

OCCA Summ. Op. at 7-8 (emphasis omitted).

The OCCA correctly concluded that the factual predicate for Petitioner's claim was incorrect: Victoria Ransom had been called as a witness by the State and had been questioned about the meetings with defense counsel during redirect rather than cross-examination. *See* Vol. III Trial Tr. 113-14, 175-92. The OCCA accurately characterized the uniform instruction and reasonably held that any request for this instruction by Petitioner's counsel would have been properly denied. *See* Okla. Unif. Crim. Jury Instruction No. 9-24 cmt. (2000) ("The instruction should not be used other than under circumstances where cross-examination evokes [the fact of pretrial interviews]."); *cf. Kinsey v. State*, 798 P.2d 630, 632-33 (Okla. Crim. App. 1990) ("[I]t is not error to refuse to give an instruction on the defendant's theory of defense if there is insufficient evidence to support it."). In addition, Petitioner cannot demonstrate his counsel's purported ineffectiveness by relying upon closing argument that took place *after* the attorneys for both sides submitted their proposed instructions to the trial judge. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see* Vol. VI Trial Tr. 366-68.

19

For all of these reasons, Petitioner has not shown that the OCCA's rejection of this claim was an unreasonable application of *Strickland* or was based upon an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1), (2); *Le v. Mullin*, 311 F.3d 1002, 1026-27 (10th Cir. 2002) (holding that the OCCA's rejection of ineffective-assistance claim under *Strickland* was not unreasonable because "it cannot have been error for [the defendant's] counsel not to request" a jury instruction not supported by the evidence); *Spears*, 343 F.3d at 1250-51 (holding that the OCCA reasonably applied *Strickland* to reject habeas petitioner's ineffective-assistance claim on an attorney's failure to request certain jury instructions where the OCCA had "reasonably held that the evidence did not support giving these instructions").

### 6. Failure to Rebut Testimony Regarding Reaction to M.R.'s Death

Petitioner next argues that his counsel's performance insufficiently rebutted evidence presented by the State that portrayed Petitioner as uncaring and as being unaffected by news of M.R.'s death. *See* Pet. at 5-7; Pet'r's Appellate Br. at 26-28; *see also* Pet'r's Appl. Evidentiary Hr'g at 28. On appeal, the OCCA disagreed with Petitioner's contention that his attorneys failed to present a favorable picture of Petitioner through examination of Cierra Ransom or Victoria Ransom:

> Contrary to Hill's assertions, the record does contain evidence of Hill's and Cierra's emotional responses to [M.R.'s] death. [M.R.'s] mother, Cierra, testified that when she and Hill were notified of [M.R.'s] death by Dr. Caudle, they both had visible reactions and cried. Similarly, [M.R.'s] aunt, Victoria, testified that when Hill received the news, he was in "disbelief, just busted out crying and – we all did" (Tr. Vol. 3 at 145). Victoria testified further that Cierra's reaction was the same. Under questioning by defense counsel, Hill testified that his and Cierra's reaction to the news of [M.R.'s] death was "crying and stuff," and "just not understanding" (Tr. Vol. 6 at 328).

> Because the factual basis of Hill's alleged error is contradicted by the record, he fails to meet his burden under *Strickland*. This claim is denied.

OCCA Summ. Op. at 8; *see also* Vol. III Trial Tr. 73 (Victoria Ransom testifying that she was praying at the hospital while waiting for news); *id.* at 268 (Dr. Caudle's testimony that Petitioner and Cierra Ransom "had somewhat of a flatter response" than Victoria Ransom to news of M.R.'s death but "were emotional").

The OCCA appears to have confused Cierra Ransom's testimony with portions of other witnesses' testimony, as others, but not Cierra herself, testified that she cried when informed of M.R.'s death. *See* Vol. III Trial Tr. 44-112. But Petitioner does not argue that this discrepancy is material or unreasonable, and he has not shown that the OCCA's decision was "based on" its mistaken characterization of this specific item of testimony. *See* Pet. at 5-7; 28 U.S.C. § 2254(d)(2); *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011) (citing *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (noting that "it does not necessarily follow" from an assumption that the presumption of correctness of the state court's factual statements has been overcome "that the state court adjudication was based on an unreasonable determination of facts")). Although the OCCA's description of Cierra Ransom's testimony is inaccurate, it nonetheless accurately found that testimony was presented at trial that supported a favorable view of Petitioner, including Cierra Ransom's and his emotional reaction to learning of M.R.'s death, and therefore concluded that Petitioner's attorney did not perform deficiently by failing to ensure that additional or different favorable evidence was presented to the jury. *See* OCCA Summ. Op. at 8.

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105; *see Saiz v. Ortiz*, 392 F.3d 1166, 1176 (10th Cir. 2004) (noting that deference is owed to the state court's result rather than its reasoning). Petitioner has not shown that the OCCA's rejection of this claim was an unreasonable application of *Strickland*'s governing standard or was premised upon an unreasonable factual determination. *See* 28 U.S.C. § 2254(d)(1), (2); *Strickland*, 466 U.S. at 687-91; *Byrd*, 645 F.3d at 1171-72. Relief on this basis should be denied.

## B. Ground Two: Violation of Due Process and Right to Present a Complete Defense

As noted above and by the OCCA, Petitioner's counsel never directly moved to admit the boys' videotaped interviews into evidence during trial. Petitioner next argues that the trial court erred by "precluding the defense from introducing into evidence the forensic interviews" of M.R.'s two brothers (discussed above) and that this error deprived Petitioner of his rights to due process and to present a complete defense. Pet'r's Appellate Br. at 29-31 (citing U.S. Const. amends. VI, XIV; *Crane v. Kentucky*, 476 U.S. 683 (1986)). The OCCA rejected Petitioner's claim on its merits:

> In response to an oral motion *in limine* by the prosecutor at trial, the trial judge ruled the interview tapes were inadmissible hearsay. The judge made it clear, however, that the ruling was preliminary only, instructing defense counsel approach the bench again and present argument in support of admission when he moved to introduce them during trial. Counsel, however, made no attempt to introduce the interviews at trial. Defense counsel did not renew his objection to the motion *in limine* at the appropriate point at trial, and never made the argument he raises here—that the interviews are admissible hearsay under the residual exception to the hearsay rule. Consequently, Hill's claim is waived and reviewed for plain error only. *See*

> *Short*[*v. State*], 1999 OK CR 15, ¶ 65, 980 P.2d at 1102-1103("A ruling on a motion *in limine* is merely advisory and not conclusive. To properly preserve the issue contained in such a motion, the proposition must be introduced at trial, and if overruled, objections should occur at that time. Appellant's failure to object to the admission of the exhibits when they were offered waives all but plain error.")(internal citation omitted). For the same reasons we decline to find counsel ineffective for not raising this argument, we find no plain error in the judge's *in limine* ruling finding the interviews inadmissible.

OCCA Summ. Op. at 9-10; *see also* Vol. V Trial Tr. 14-15, 16-28; *Fairchild v. Trammell*, 784 F.3d 702, 711-12 (10th Cir. 2015) ("'When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'" (quoting *Richter*, 562 U.S. at 99)); *Douglas v. Workman*, 560 F.3d 1156, 1178-79 (10th Cir. 2009) ("[W]hen a state court applies plain error review in disposing of a federal claim, the decision is on the merits to the extent that the state court finds the claim lacks merit under federal law.").

The OCCA's decision accurately recounts the relevant proceedings, including the lack of any definitive ruling by the trial court to exclude the interviews, and Petitioner does not directly dispute its factual determinations. *See* Vol. II Trial Tr. 346; Vol. V Trial Tr. 14-15, 16-28; Pet. at 7-8; Pet'r's Appellate Br. at 19, 29. Further, even assuming that the trial court's pretrial comments regarding the admissibility of the interviews purely for impeachment purposes amounted to an evidentiary ruling that precluded defense counsel from later seeking admission on other grounds, Petitioner has not shown that he is entitled to federal habeas relief.

### 1. Due Process

First, to the extent Petitioner disagrees that a ruling on a motion in limine is preliminary in nature under Oklahoma law, or argues that the evidence was improperly excluded because it was admissible under Oklahoma's residual hearsay exception, "federal habeas corpus relief does not lie" for such errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted). Title 28, Section 2254(a) of the United States Code "unambiguously provides that a federal court may issue the writ to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (internal quotation marks omitted). And a federal district court must accept the state court's interpretation of its own authority. *See id.* ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). It follows that the Court "will only consider state law evidentiary questions on habeas 'if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Durbin v. Province*, 448 F. App'x 785, 787 (10th Cir. 2011) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002)); *accord Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *see also Jackson*, 143 F.3d at 1322 (noting that the habeas court approaches the fundamental-fairness analysis "with considerable self-restraint" (internal quotation marks omitted)).

No such due process violation has been shown here. As noted, both boys gave statements during their interviews that were confusing, untrue, and/or arguably unfavorable

to Petitioner. *See supra* Part III(A)(1) (citing Ct.'s Exs. 3, 4). Petitioner himself testified and was able to give his account of the events of November 21, 2010. *See* Vol. VI Trial Tr. 306-56. Petitioner has not demonstrated that his trial was rendered fundamentally unfair by the failure of the videotapes to be introduced into evidence and has not shown that the OCCA's rejection of this claim was contrary to or unreasonably applied clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Durbin*, 448 F. App'x at 787.

### 2. Right to Present a Complete Defense

Regarding the contention that exclusion of the videotapes violated his right to present a complete defense, Petitioner likewise cannot show that he is entitled to habeas relief. With respect to this constitutional right, the Tenth Circuit has explained:

> Defendant argues that the denial of his constitutional claim [of denial of his right to present a complete defense] was contrary to or an unreasonable application of clearly established law set forth in a number of Supreme Court precedents. Two statements by the Court are probably the most helpful to his position. The first is: "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane*[, 476 U.S. at 690] (even after trial court had decided that confession was admissible, defendant was constitutionally entitled to put on evidence of circumstances of confession to show that it was unreliable) (citations and internal quotation marks omitted). The second is: "Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan v. Lucas*, [500 U.S. 145, 151 (1991)] (Constitution did not necessarily require admission of evidence of prior sexual relationship between rape victim and defendant when defense did not comply with requirement of notice to prosecution) (quoting *Rock v. Arkansas*, [483 U.S. 44, 56 (1987)] (rejecting per se rule excluding hypnotically refreshed testimony when applied to defendant's own testimony)).

> At the same time, however, the Supreme Court has never questioned the traditional reasons for excluding evidence that may have some relevance.

*Dodd*, 753 F.3d at 985.

In *Dodd*, the habeas petitioner argued "that he was denied his constitutional right to present a complete defense when the trial court excluded evidence that somebody else had committed the [charged] murders." *Id.* at 983-89. The OCCA rejected the claim on the merits, and the Tenth Circuit found that the state court's decision was not contrary to or an unreasonable application of clearly established law. *See id.* at 984-89. Here, likewise, Petitioner's argument that the trial court's exclusion of the videotaped interviews amounted to constitutional error, and that the OCCA's determination cannot survive scrutiny under 28 U.S.C. § 2254(d)(1), is untenable.

"Only rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013). In *Dodd*, the Tenth Circuit noted examples where such a violation had been found: "the state court either had provided no rationale for the exclusion, could not defend an absurd rule, or had failed to examine the reliability of the specific evidence in that case." *Dodd*, 753 F.3d at 987 (citations omitted). No such circumstances are present here.

Although defense counsel objected, the prosecution indisputably advanced a "'rational justification'" for the exclusion of the videotapes, and "there were rational grounds for exclusion." *See Dodd*, 753 F.3d at 987 (quoting *Crane*, 476 U.S. at 691); Vol. V Trial Tr. 14-15, 16-28; *see also* Vol. I Trial Tr. 35-36; Vol. II Trial Tr. 347. Nor does

Petitioner argue that Oklahoma's relevant statutes and jurisprudence are facially unconstitutional or improper. *See Dodd*, 753 F.3d at 986, 987 (discussing *Washington v. Texas*, 388 U.S. 14 (1967), as an instance where the Supreme Court found the criminal defendant's right to present a complete defense was violated by an "absurd" state evidentiary rule that "'could not be rationally defended'" (quoting *Jackson*, 133 S. Ct. at 1992)).

On direct appeal, rather than providing "no rationale," the OCCA's conclusion that the interviews were inadmissible under section 2804.1 included a thorough examination of the nature of the excluded evidence and provided specific reasons as to why the videotapes did not meet the exceptional circumstances or possess sufficient guarantees of trustworthiness to be admissible under section 2804.1. *See* OCCA Summ. Op. at 3-4, 9-10; Okla. Stat. tit. 12, § 2804.1. The OCCA did not improperly apply its rules of evidence "in a per se or mechanistic manner"; rather, "it analyzed [the defense's] evidence on the merits" and found that it properly would be excluded. *See Dodd*, 753 F.3d at 988 (internal quotation marks omitted); OCCA Summ. Op. at 3-4, 9-10.

Petitioner therefore cannot show that he was denied the right to present a complete defense or that the OCCA's determination contradicted or unreasonably applied "clear Supreme Court precedent" as to either the Fourteenth or the Sixth Amendment. *Dodd*, 753 F.3d at 987; *see* 28 U.S.C. § 2254(d)(1).

### C. Ground Three: Improper Admission of Opinion Testimony

At trial, the State presented the testimony of Tony Foreman, a detective with the Oklahoma City Police Department who had investigated M.R.'s death. *See* Vol. IV Trial

Tr. 36-69; Vol. VI Trial Tr. 361-64. Petitioner argues that certain parts of Detective Foreman's testimony constituted improper, "generalized 'expert' testimony" unconnected to the homicide investigation and that the presentation of such testimony violated state law and Petitioner's right to due process. Pet'r's Appellate Br. at 32-34; *see* Pet. at 8-10.

The OCCA disagreed, stating:

> Hill claims his right to a fair trial was violated by improper expert opinion testimony. Specifically, he argues the testimony of Oklahoma City Police Detective Tony Foreman identifying circumstances tending to trigger child abuse (e.g., financial stress, marital stress, lack of sleep) was generalized "expert" testimony and therefore inadmissible. By arguing that the evidence lacked a connection to his case, Hill raises a relevancy claim. Because Hill objected to this testimony as not relevant at trial, the issue is preserved for appeal. We review a ruling on the admissibility of evidence for an abuse of discretion.

> Detective Foreman not only testified about possible theoretical triggers for child abuse, but also testified that during his interview, Hill disclosed that: (1) he had approximately four hours sleep the night before [M.R.] was injured; (2) the children in the house had awakened before the adults, wanted to be fed, were being rowdy, and had made a mess of things he had tidied up the night before; (3) he was out of work and had to provide child support not only to Cierra for the one child he had fathered with her, but to another woman with whom he had fathered three children; (4) he was dependent upon Cierra for a place to stay; and (5) he had no money to repair his car.

> Detective Foreman's testimony listing various theoretical triggers for child abuse was directly linked to this case, and to Hill's circumstances in particular. Further, that testimony was derived from the Detective's firsthand interview of Hill. Because Foreman's testimony connected various theoretical child abuse triggers directly to Hill and the specific circumstances of his case, the testimony was relevant. The trial judge did not abuse his discretion by allowing the testimony.

OCCA Summ. Op. at 10-11 (citation omitted).

Petitioner's claim that the testimony was inadmissible under Oklahoma law is not cognizable on federal habeas review. *See McGuire*, 502 U.S. at 67; *Corcoran*, 562 U.S. at

5.  As to Petitioner's due process claim, Petitioner has not shown that Detective Foreman's testimony was "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Payne*, 501 U.S. at 825; *see also Revilla*, 283 F.3d at 1212.  Detective Foreman did indeed present testimony applying his knowledge of common child-abuse issues to the specific facts of this homicide case.  *See* Vol. IV Trial Tr. 45, 48-57.  Other evidence in the record, including Petitioner's own testimony, was consistent with Detective Foreman's account of Petitioner's interview disclosures.  *See, e.g.*, Vol. VI Trial Tr. 315, 318 (Petitioner testifying that the children were hungry and had made a mess of the house), 331-35 (Petitioner testifying that he stayed at Cierra Ransom's house, that he was out of work and could not afford to have his car repaired, and that he had three other children in addition to his child with Cierra Ransom).  Petitioner therefore cannot show a lack of fundamental fairness associated with the admission of this testimony or that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.  *See Durbin*, 448 F. App'x at 787; 28 U.S.C. § 2254(d)(1).

### D.  Ground Four: Cumulative Error

In his final proposition of error, Petitioner argues that the combined effect of all the errors claimed above deprived him of a fair and impartial trial.  *See* Pet. at 10-11; Pet'r's Appellate Br. at 35.  The OCCA rejected this claim on the merits.  *See* OCCA Summ. Op. at 11.

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state

court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (internal quotation marks omitted). As that language suggests, "[c]umulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998); *cf. Cargle v. Mullin*, 317 F.3d 1196, 1206-07 (10th Cir. 2003) (noting that a cumulative-error analysis performed when there has been no adjudication on the merits of the cumulative-error claim "aggregates all errors found to be harmless," including with respect to claims that "have been individually denied for insufficient prejudice").

The Tenth Circuit has recognized that a circuit split exists regarding whether the requirement to conduct cumulative-error analysis is clearly established federal law under 28 U.S.C. § 2254(d)(1). *See Cole v. Trammell*, 755 F.3d 1142, 1177 n.14 (10th Cir. 2014). The Tenth Circuit has also has stated that its precedent "may very well signal where our court has come down on the issue—*viz.*, that cumulative-error analysis is clearly established law." *See id.* (internal quotation marks omitted); *cf. Bland v. Sirmons*, 459 F.3d 999, 1029 (10th Cir. 2006) ("Because the OCCA concluded that the cumulative errors did not deprive [the defendant] of a fair trial, we must defer to its ruling unless it constitutes an unreasonable application of the cumulative-error doctrine.").

Having reviewed the state-court record, the undersigned concludes that Petitioner cannot show a violation of fundamental fairness and that the OCCA's decision on Petitioner's cumulative-error claim did not unreasonably apply and was not contrary to clearly established federal law. As outlined above, there were not two or more federal

constitutional errors present in the state-court proceedings to aggregate, including with respect to claims where it is recommended that relief be denied based upon an insufficient showing of prejudice. *See Littlejohn*, 704 F.3d at 868; *Moore*, 153 F.3d at 1113; *Cargle*, 317 F.3d at 1206-07. Relief on this basis should be denied.

## RECOMMENDATION

As detailed above, it is recommended that the Petition Under 28 U.S.C. § 2254 (Doc. No. 1) be DENIED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by September 12, 2017, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 22nd day of August, 2017.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE